# Commonwealth v. Western Land & Improvement Co., Appellant.

*Taxation—Dividends—Land companies—Act of June 1, 1889.*

Under the act of June 1, 1889, P. L. 420, a valuation of the capital stock of a corporation need only be resorted to as a basis for taxation, when no dividend has been made or declared by the corporation, or when that made or declared has been less than six per centum of the par value of the stock.

During a tax year, a land and improvement company received from rents and sale of real estate $85,000, being 85 per cent of the par value of its paid up stock, which it distributed among its stockholders in proportion to their respective holdings. The capital stock remained intact after the distribution. The court below found as a fact that the nature of the business in which the company was engaged precluded the possibility of estimating either gross or net earnings accruing during the tax year, with any reasonable degree of accuracy. A settlement was made against the company charging it with 42½ mills, which was at the rate of one half mill upon the capital stock for each one per centum of dividend. *Held,* that the settlement was proper.

Argued May 29, 1893. Appeal, No. 1, May T., 1893, by defendant, from judgment of C. P. Dauphin Co., Jan T., 1892, No. 551, for plaintiff, on appeal from tax settlement. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Appeal from tax settlement.

The case was tried by agreement by the court without a jury. The court found the facts to be as follows, in an opinion by SIMONTON, P. J.:

" 1. Defendant was incorporated in October, 1887, under the general laws of this state for the purpose of purchasing, holding, leasing, improving, selling and otherwise dealing in real estate, with a paid up capital of one hundred thousand dollars, divided into shares of the par value of fifty dollars each, and it has been from that date and still is engaged in business in the county of Westmoreland, where it has purchased real estate, built houses, laid out and opened streets and roads, and sold lands and lots, reinvesting the proceeds so that during the tax year 1889 and 1890 it made or declared no dividends. And its capital stock was during said years appraised at one

hundred and fifty dollars per share, and taxed at the rate of three mills on its appraised value.

"2. During the tax year 1891, defendant received from rents, and the sale of real estate, and distributed among its stockholders in proportion to the shares· held and owned by them respectively, eighty-five thousand dollars, being eighty-five per cent on the par value of its capital stock paid in ; and as required by law, its treasurer reported this distribution to the auditor general, and stated in his report that owing to the nature of the business in which defendant was engaged he could not estimate the amount of the gross or net earnings of defendant, which accrued during said year, and we find this statement to be true.    He also reported that the average market value of the shares during said year was ninety-five dollars each.    This report was made under oath.

"3. In an affidavit subsequently made, defendant's treasurer undertakes to state what were its net earnings, during the tax years 1889, 1890 and 1891, but, as had been previously stated by him in his sworn report, and as we have found above, the nature of the business in which the defendant was engaged precluded the possibility of this being done with any reasonable degree of accuracy.

"4. On the basis of this report, made as above stated, the auditor general and state treasurer made a settlement for tax on capital stock against defendant for said year as follows :

" ' Western Land and Improvement Company

" ' In account with the Commonwealth of Pennsylvania, Dr.

" ' To tax on capital stock per acts of June 7, 1879, and June 1, 1889, for the year ending the first Monday of November, 1891, as per report herewith filed.

" ' Dividend, 85 per cent on capital stock,   .    .    $100,000
Tax, 42½ mills, (one-half mill for each one per cent of dividend,)   .    .    .    .    .    .    .    4,250
      " ' Due Commonwealth,    .    .    .    $4,250

"5. From this settlement defendant appealed to this court, and, as required by the act of 1811, giving the right to appeal, filed its specification of objections to the settlement, three in number.    The first and second state merely matters of fact, which we have found above as far as they have been proved.

" 6. The third specification raises the only legal question in this case and is as follows :

" ' The said payment to the stockholders was not a dividend, but a distribution of certain assets of the said company.   The appellant is not taxable on dividends, but is liable only for the year ending on the first Monday of November, 1891, at the rate of three mills on the average market value of its stock during said year, to wit : for five hundred and seventy dollars, which has been paid to the treasurer of the commonwealth.   The appellant is not indebted to the commonwealth of Pennsylvania.'

" The only objections to the settlement of an account by the auditor general and state treasurer, which the court can legally consider—as we shall presently show—are those specified in the appeal which the act of 1811 authorizes, and, when made, requires to be filed with the appeal in the auditor general's office.

" The sole question, therefore, before us, is that raised by the third specification quoted above : Whether defendant for the year, during which it made a dividend of eighty-five per cent, is taxable at the rate of one half mill for each one per cent of dividend, or at the rate of three mills on the appraised value of its capital stock; and this we shall now proceed to decide.

" The act of June 1, 1889, § 20, P. L. 420, requires the secretary or treasurer of every corporation taxable under it to report in writing to the auditor general annually the amount of its capital stock, and the amount, date and rate per cent of all dividends made or declared during the year; and § 21 enacts that every such corporation ' shall be subject to and pay . . . . annually a tax to be computed as follows, namely : If the dividend or dividends made or declared by such corporation . . . . during any year ending with the first Monday of November, amount to six or more than six per centum upon the par value of its capital stock, then the tax to be at the rate of one half mill upon the capital stock for each one per centum of dividend so made or declared ; ' and it further provides that if a dividend of less than six per centum be made or declared the capital stock is to be appraised and ' then the tax to be at the rate of three mills upon each dollar of valuation of the said capital stock.'

" The language of this act would seem to be so plain as to leave no room for doubt as to its meaning.   It fixes the rate

and mode of assessment of the tax when the dividend equals or exceeds six per cent. There is no provision for an appraisement of the capital stock when such dividend is made, or for assessing the tax at any other rate ; and the blanks furnished by the auditor general, on which the reports of dividends are to be made, expressly state that when the dividends equal or exceed six per cent no appraisement is required.

"In Dame's Appeal, 62 Pa. 417, SHARSWOOD, C. J., says on page 420 : ' It is a cardinal canon of interpretation, both of deeds and statutes, expressed in the maxim *quoties in verbis nulla est ambiguitas, ibi nulla expositio contra verba fienda est :* Broom's Legal Maxims, 555. The words—the context—the subject-matter are to be considered equally, if not before, the effects and consequences or the reason and spirit.' And in Abley v. Dale, 11 C. B. 378, JERVIS, C. J., says on page 391 : ' If the precise words used are plain and unambiguous, in our judgment we are bound to construe them in their ordinary sense, even though it do lead, in our view of the case, to an absurdity or manifest injustice. Words may be modified or varied, where their import is doubtful or obscure. But we assume the functions of legislators when we depart from the ordinary meaning of the precise words used, merely because we see, or fancy we see, an absurdity or manifest injustice from an adherence to their literal meaning.' And in City of Pittsburgh v. Kalchthaler, 114 Pa. 547, Justice GREEN, on page 552, says : ' We think it always unsafe to depart from the plain and literal meaning of the words contained in legislative enactments out of deference to some supposed intent, or absence of intent, which would prevent the application of the words actually used to a given subject. Such a practice is really substituting the theories of a court, which may, and often do, vary with the personality of the individuals who compose it, in place of the express words of the law as enacted by the lawmaking power. It is a practice to be avoided and not followed. It has been condemned by many text writers and by many courts. Occasionally it has been departed from, but the path is a devious and a dangerous one, which ought never to be trodden, except upon considerations of the most convincing character and the gravest moment.'

"Assuming these principles to be applied to this case we might safely stop here, and rest our conclusion, that the tax

charged in the settlement appealed from is correctly assessed, on the plain unambiguous words of the act; but to preclude the possibility of any doubt on the subject we shall pursue it somewhat further.

"Our learned predecessor, Judge PEARSON, aptly said in the Commonwealth v. Phœnix Iron Co., 1 Pears. 383 : 'In order to properly understand and construe our tax laws, we are obliged to look into their origin and history.' If, acting on this suggestion, we look into the history of the tax on capital stock to be found in the several taxing acts, and the decisions of the courts, we shall find that its construction has been settled for nearly or altogether half a century. The act of June 11, 1840, P. L. 612, provided that the capital stock paid in of all corporations ' on which a dividend or profit of one per cent per annum is made or declared shall . . . . pay for the use of the commonwealth a tax of one half mill on every dollar of the value thereof, and an additional half mill on every dollar of the value thereof for every additional one per cent per annum of dividend or profit, made or declared on said capital stock.' This act imposed no tax where no dividend was made, and, therefore, of course, made no provision, nor was there any necessity for an appraisement or assessment of the tax in any other manner than according to the rate per cent of the dividend. It was superseded by the act of April 29, 1844, § 33 of which provided ' that the amount of tax chargeable on the capital stock of all banks, institutions and companies . . . . on which a dividend or profit of six per cent per annum or more shall be made and declared, shall be at the rate of one half mill on each one per cent of such dividend or profit, and the same shall be assessed as provided in the act of June 11, 1840 ; ' and, as the mode of assessment provided by the latter act was an assessment according to the rate per cent of dividend, this was, in effect, enacting that this mode must be adopted, where the dividend equaled or exceeded six per cent. Then the act of 1844 further provided for an appraisement, where less than six per cent or no dividend was made or declared, thus determining clearly when the rate was to be one half mill for each one per cent of dividend, and when it was to be three mills on the appraised value, but leaving no case in which the question whether it should be one or the other was to be determined by any other fact than the rate per cent of dividend made and declared.

" The act of April 12, 1859, took the place of § 33 of the act of 1844, and the scope and relation of these acts, to each other, and the difference between them, is thus stated by AGNEW, C. J., in Phœnix Iron Co. v. Commonwealth, 59 Pa. 104 : ' The act of April 29, 1844, § 33, charged the tax, which it imposes directly upon the capital stock of the corporations of this state. If a company declared a dividend or profit of six per cent on the capital, the tax was to be measured at the rate of one half mill on each one per cent of the dividend or profit; but when the corporation failed to make dividends or declared less than six per cent per annum, then a valuation of the stock itself was to be made and returned, and the tax was for a sum equal to three mills on every dollar of the capital stock thereof so estimated and appraised. The first section of the act of April 12, 1859, also imposed the tax on the capital stock, but changed the act of 1844 so far as, instead of a valuation of the stock when the dividend fell below six per cent, to require payment of the tax at the rate of a half mill for each one per cent of dividend made or declared, and provided for the valuation of the stock according to the act of 1844, only when the corporation failed to make or declare any dividend.'

" Next came the act of May 1, 1868, a consolidation of all the previous acts taxing corporations for state purposes, the fourth section of which, imposing the tax on capital stock, is almost a literal transcript of the act of 1859. This act continued in force until it was replaced by the act of April 24, 1874, P. L. 68, which was followed by the act of March 20, 1878, P. L. 6, and this in turn by the act of June 7, 1879, all of which are shown, in Catawissa R. R. Company's Appeal, 78 Pa. 59, and Bridge Co. v. Commonwealth, 117 Pa. 265, to be parts of the same taxing system and practically identical; and the act of 1889, under which the tax is claimed in this case, is but a continuation of the former acts.

" Thus we see that the tax on capital stock has existed for half a century, and has been during all that time assessed and paid, where the dividends equaled or exceeded six per cent at the rate and on the basis on which it was computed and assessed in this case. During that time thousands of such settlements have been made by the auditor general and state treasurer, and hundreds of them have been appealed to this court, but in no

case until now has it ever been even suggested in an appeal or argument that the tax could be charged at the rate of three mills on the appraised value of the capital stock when the dividends equaled or exceeded six per cent.

"It has uniformly and consistently been held that under such circumstances the dividend whether earned or not furnishes the measure of the tax. Thus in Commonwealth v. Pennsylvania Insurance Co., 13 Pa. 165, the act of June 11, 1840, to which we have referred above, which imposed the tax at the rate of one half mill for each one per cent of dividend, from and after January 1, 1841, was considered, and the question was whether a dividend declared on December 31, 1840, on the business of the preceding six months was taxable; and deciding that it was not. Justice COULTER said: ' The dividend is not the subject taxed; it is the capital stock paid in which is taxed; the dividend only furnished the rule by which the amount of the tax shall be measured and that is one half mill on the capital stock; where the profit or dividend is one per cent per annum, an additional half mill on the capital stock for every one per cent that is made by the institution from and after January 1, 1841; but it was made and declared before that period, and for profits accruing before that date. It is, therefore, not within the purview of the statute. If any part of the profits had accrued after January 1, 1841, and the directors had mingled them with profits which accrued before, and then made a dividend, the case would have been different; because, in that event, the institution would voluntarily have run its head into a noose. We think the tax did not accrue in this case, and cannot be measured by a dividend, all of which accrued, and which was made and declared previous to 1st January, 1841.'

" As we have already pointed out, this act imposed no tax when no dividend was made and declared, and, therefore, the enactment that the tax was to be at the rate of one half mill for each one per cent of dividend must have been intended to furnish a hard and fast rule, which was to be applied in every case, where a dividend was made and declared; and this was certainly expressed as clearly as language could express it, and required no process of interpretation. Therefore, when the same rule was prescribed in the act of April 29, 1844, for cases

where the dividend equaled or exceeded six per cent, it was well understood. And as this act for the first time imposed the tax, where no dividend was made or declared, it also first provided for an appraisement, but this was to be made only when the dividend did not amount to six per cent, and the construction, therefore, was as stated by Judge PEARSON in Commonwealth v. Phœnix Iron Co., 1 Pears. 383, that ' the tax was to be measured by the amount of dividends declared when they exceeded six per cent, and by an appraisement of the stock when they fell short of that sum ;' or as stated by AGNEW, C. J., in the same case, 59 Pa. 104 : ' If a company declared a dividend or profit of six per cent on the capital, the tax was to be measured at the rate of one half mill on each one per cent of the dividend or profit ; but when the corporation failed to make dividends or declared less than six per cent per annum, then a valuation of the stock itself was to be made and returned, and the tax was to be " a sum equal to three mills on every dollar of the value of the capital stock thereof so estimated and appraised." ' So in Atlantic & Ohio Tel. Co. v. Commonwealth, 66 Pa. 57, THOMPSON, C. J., says, speaking of the commonwealth : ' She has a mode of estimating and collecting her taxes from her own corporations, no matter who holds the stock. By whomsoever the stock is held the measure of the tax is upon the dividend declared, and no such thing as partial dividends is ever to be presumed. When a dividend is declared, that gives the measure and furnishes the rule for the tax. Dividends were declared for all the years to which the settlements apply, and the basis of the settlement in the auditor general's office was faultless.' And in Commonwealth v. Pittsburgh, Ft. Wayne & Chicago Ry. Co., 74 Pa. 83, AGNEW, C. J., said on page 90 : ' A dividend is not capital, but the product of capital, and this product it is which the law by its own terms makes both the criterion and the measure of the taxation of the capital. Thus, if a profit upon the actual capital or investment be either made or passed over to the stockholders without a declaration of dividend, or if a dividend be declared to them, the sum so made or so declared becomes the measure of the tax. . . . If a dividend be declared and set apart to the shareholders, the stock is taxable on the basis of this declaration, of which it makes return by

law to the auditor general. The company is estopped by its
declaration and report, whether the dividend be earned or not.
Atlantic and Ohio Telegraph Company v. Commonwealth, 66
Pa. 57. The late Chief Justice said, in the last case, the only
question was whether the court below erred in regarding the
returns as the evidence of what dividends were declared as the
basis of the auditor general's statement. He remarked, " She
(the commonwealth) is dealing with her own corporation, and
acting solely on the evidence of its doings in regard to the sub-
ject of its liability to taxes, viz.: dividends made or declared.
This is shown by its proper officer, the treasurer, in his return
to the auditor general; and the basis of that taxation is the
dividends declared and paid."' And in Commonwealth v. Reno
Real Estate Co., 2 W. N. 181, the court say: ' This is not a
case where no dividends were declared, the consequence of
which is a valuation of the stock as the means of measuring the
tax. Where a dividend is declared, that becomes the measure of
the tax. The fact that the dividend is appropriated to the share-
holders of that part of the capital which is called preferred
stock, does not change the criterion of taxation, which the com-
monwealth herself established, to wit, the dividend declared.'
Columbia Conduit Co. v. Commonwealth, 90 Pa. 307, is an in-
structive case on this subject. Judge PEARSON found as a
fact that although dividends amounting to two hundred thou-
sand dollars had been made and declared during the year the
earnings were only $110,570.42, the differences having been oc-
casioned by losses by fire, and the question was as stated by
him : ' Can the court allow a credit for that loss, or, under the
words of the statute, must we tax the capital stock according
to the " dividends made or declared by the company ?"'' And
in answering this question he said : ' If the tax were imposed
on the net profits there would be no difficulty. The sum which
the stockholders were obliged to pay would be deducted. The
profit to them is lessened by that much. Such is not the form
of the assessment or the words of the statute. It is not even
a tax on dividend, but on the capital stock, measured by the
amount of dividend made or declared. . . . The dividends in
the case under consideration were actually made and declared
and this fixes the tax on the capital stock.' This case was
affirmed by the Supreme Court on Judge PEARSON's opinion.

And in Matson's Ford Bridge Co. v. Commonwealth, 117 Pa. 265, Mr. Justice CLARK says, on page 276 : ' The value for taxation is to be fixed by the aggregate of the dividends of profits made or declared during the fiscal year. . . . A profit made or passed to the stockholders becomes the measure of the state tax.   The formal declaration of a dividend is conclusive ; the company is estopped by it whether the dividend be earned or not.'

" The cases above referred to and many others which might be cited show that it is not the theory of the tax on capital stock measured by the dividends, that all the money divided was earned during the year in which the dividend is declared. On the contrary, the theory, as is distinctly shown by the Bridge Company case, is that it was not all earned during such year, and proof of that fact is not needed, or, if made, does not alter the rate or change the valuation.   When an unusually large dividend is made either in cash or stock, it is assumed to be, and, in fact, always is, a distribution among the share-holders of earnings or profits, which have been accumulating for years, in respect to which no adequate tax has heretofore been assessed, and, therefore, it is proper it should furnish the meas-ure of the tax when divided.   True, the possession of the fund thus divided may to some extent have influenced the valuation of the capital stock in previous years, when no dividend, or less than six per cent was divided, and the capital stock was taxed at the rate of three mills upon its appraised value ; but experience has shown that a comparatively low valuation is put upon capital stock which pays none or very small dividends, and a comparison of the appraised value upon the stock of this defendant during the years in which it made no dividends, with the value which would be indicated by the amount of profits claimed to have been made during those years, will show such to have been the case in this instance.

" Reference has been made to the recent case of the Com-monwealth v. Brush Electric Light Co., 28 W. N. 527, [145 Pa. 147,] in which it would seem that the tax was computed, by the learned justice who wrote the opinion, at the rate of three mills on the appraised value of the capital stock, although the dividend declared during the tax year amounted to more than six per centum on its par value.   The rate at which the

tax was to be computed was, however, not one of the questions in that case, and could not have been, for the following reasons :

" First. Because there was, in the appeal filed in that case, no specification or objection to the assessment of the tax as made in the settlement appealed from, at the rate of one half mill for each one per cent of dividend.

" Second. Because this question was not raised or discussed in the court below.

" Third. Because as this question was not raised in the court below, by the specification of objections to the appeal, or in any other way, no ruling was made upon it by the court below, and, therefore, no assignment of error could have been made to any such ruling.

" Fourth. No assignment of error was, in fact, made, or claimed to be made, to any ruling or supposed ruling, on the question of the proper mode of assessing the tax, and this question was, therefore, not before the Supreme Court.

" Fifth. No claim or suggestion was made in the Supreme Court, by argument, either oral or written, that the assessment of the tax at the rate of one half mill for each one per cent of dividend, as made in the settlement appealed from, was not according to law.

" Sixth. It was expressly agreed and argued in the court below and in the Supreme Court, that the tax must be assessed, under the law, at one half mill for each one per cent of dividend in all cases where the dividend equals or exceeds six per cent.

" A reference to the specification of objections filed with the appeal in the Brush Company case, will show that none of the five specifications filed could by the remotest possibility raise the question discussed in the latter half of the opinion of the learned judge ; and we hazard nothing in saying that the able and careful counsel, who drew the specifications and filed the appeal, was, from his long experience in the auditor general's office and his extensive practice in tax cases, so well acquainted with the uniform practice of that office, and with the tax laws, that it would never have occurred to him to object to a settlement for the reason that the tax was assessed at the rate of one half mill for each one per cent of dividend, where the dividends declared during the year amounted to more than six per cent ;

or to claim that such a settlement would be invalidated by showing that the whole amount of the dividend was not earned during the year.

"The act of March 30, 1811, Purd. 1386, giving the right to appeal from a settlement made by the auditor general and state treasurer, provides 'that the appeal be filed in the office of the auditor general within sixty days after notice of such settlement and be accompanied with a specification of objections to the said settlement;' which appeal is to be transmitted by the auditor general to the clerk of said court. In Porter v. Commonwealth, 1 P. & W. 252, it was held that the person appealing from a settlement of the auditor general and state treasurer cannot raise, and the court to which the appeal is taken cannot hear and determine, any other objections to the settlement than those specified in the appeal. Chief Justice GIBSON, delivering the opinion of the court, said: 'The act of March 30, 1811, requires an appeal from the auditor general to be accompanied with a specification of the appellant's exceptions, and doubtless to indicate the very points to be determined by the court. As there is no reason to appeal in respect to points that are admitted, it would be flagrantly unjust to permit the accountant to hold in reserve anything that might have been allowed, had it been urged at the settlement, and thus subject the commonwealth to expense, and her officer to vexation without just cause.' And after stating the specifications before him he added : ' These, therefore, are the only points which the court was competent to hear and determine.'

"This principle has been so strictly held that in Commonwealth v. Porter,—not the same case nor party appellant—21 Pa. 385, the court held that a specification of objection to the principal sum charged in a settlement appealed from did not, when the principal was properly charged, let in an independent objection to the charge of interest, this objection not having been specified when the appeal was taken. LOWRIE, J., delivering the opinion of the court, said: ' Under our laws the auditor general, aided by the state treasurer, and, when necessary, by the governor, constitutes a tribunal that is to examine, adjust, and decide upon all claims of the state against its revenue officers, subject to an appeal to the general judiciary. But no appeal is allowed without a specification of objection to the

decision complained of. In this case the accountant filed a specification of objections to the principal items of the account as stated by the auditor general, but none to the item of interest. How then could the question of interest be raised on the appeal? That it could not be has been several times directly decided: 1 P. & W. 252; 6 State Rep. 124; and this is one of the most plain and common principles of administrative law: 7 S. & R. 276 : 2 State Rep. 153; 6 Id. 483; 1 W. & S. 480; 5 Id. 385. It is the rule always practiced on in relation to reports of auditors, masters, and arbitrators.'

" ' It is said, however, that the objection to the charge of interest was unnecessary, because the objection to the principal includes it as an incident. True enough, so far as it is an incident, and, therefore, if the objections to the principal or part of it had prevailed, there would have been a proportional deduction of the interest. But, on the other hand, and on the same principle, an unavailing objection to the substance could not affect its shadow. . . . It is only by a special objection that the mind of the court can be led to inquire whether, the principal being proved or admitted, the charge of interest is improper.'

" These cases are cited and approved in Del., Lack. & Western R. R. Co. v. Commonwealth, 66 Pa. 64, where in deciding the case THOMPSON, C. J., said: ' In Porter v. Commonwealth, 1 P. & W. 252, it was explicitly resolved that no point was examinable on the trial of an appeal from the settlement of an account in the auditor general's office by the appellate court, nor reviewable in this court, unless it has been specified as a ground of objection to the settlement in taking the appeal. This is an express provision of the act of March 30, 1811.' And after quoting from the act and the opinions in the two cases above cited he says: ' Both of these cases show that only so far as the specifications go, are the questions raised in the appellate court.' And quoting the specifications of objections in the case before him he adds : ' These were the objections filed by the company to the settlement in the auditor general's office, and were the only questions the court below could legally take cognizance of. This is not only so by force of the decisions referred to, but by force of the terms of the act of 1806, which require that a remedy specially provided by statute shall be strictly followed.'

" The cases above cited conclusively show that if the question was not raised in the specification of objections, it could not legally have been considered in the court below. In fact, it was not raised nor attempted to be raised or considered there, but, on the contrary, it was agreed by the counsel for the defendant in the court below that where corporations pay a dividend of six per cent or more, their capital stock is under the law taxed at one half mill for each one per cent of dividend; and the claim of counsel simply was that 'owing to the varying conditions of corporate affairs, property and business, the rate of dividends is not a certain measure of the actual value of corporate stocks:' See 28 W. N. 528.

" The question not having been raised, there was, of course, no ruling upon it, and if anything has been settled it is that a court of error will not reverse on a point not made or decided in the court whose decision is brought up for review. In Commonwealth v. Wyoming Val. Canal Co., 50 Pa. 410, Chief Justice THOMPSON (p. 417), says : ' The court will not reverse for a point not made in the court below.' In Wright v. Wood, 23 Pa. 120, the court say : ' The 7th assignment, viz. : " The court erred in charging that Wood, the plaintiff, was a bona fide purchaser for value," is frankly admitted by the counsel to raise a point not made below, and we cannot permit it to be made here.' In Drexel v. Man, 6 W. & S. 343, SERGEANT, J., says : ' This court does not upon a writ of error sit to try the merits of the case, but merely those points which are raised by the record, . . . To this alone can our attention be directed.'● In Bennett v. Hayden, decided January 4, 1892, 1 Adv. R. 105 [145 Pa. 586], PAXSON, C. J., says, speaking of certain specifications of error : ' We fail to find in the record anything to show that such point was made in the court below, or that it was even called to the attention of the learned judge. There is not a hint of it in the reasons assigned for a new trial. On the contrary, the court says in its opinion on the reserved questions, " the only question argued before the court was this question : Were the proceedings under the act of 1836 or the act of 1853 ? " We must treat the case here as it was treated below.'

" It was not claimed by counsel that any such point was raised in the court below, or that it was brought into the Su-

preme Court by any assignment of error. On the contrary, counsel for defendant in their argument in the Supreme Court quoted the admission in the court below referred to above and added: 'Where there is no dividend or the dividend paid amounts to less than six per cent, the rate is always the same, namely, three mills. . . . On the other hand, when the dividend is six per cent or more, the valuation is always the same, namely par, but the rate changes. If the dividend is just six per cent the tax is three mills, one half mill for each one per cent of dividend. If the dividend is eight per cent the rate is four mills; if it is twelve per cent the rate is six mills, or if it is twenty-five per cent the rate is twelve and one half mills. . . If the dividend is more than six per cent the tax is always assessed upon the par value, whereas if the dividend is less than six per cent the actual value governs;' and the claim by the counsel was not that the tax was improperly assessed, but that it was unconstitutional because not uniform. We fail, however, to see why a tax levied in proportion to the income of the stockholders is not uniform; and this tax on capital stock is in its final incidence a tax on the stockholder: Catawissa R. R. Co.'s Ap., 78 Pa. 59.

"In Wolverton v. Commonwealth, 7 S. & R. 273, Chief Justice GIBSON says, on 278: 'No judge ought in justice to his own reputation as a lawyer or to the rights of suitors to allow any bill of exceptions, which does not contain the very point decided and nothing else.' But what if cases are determined in the court of errors on points with respect to which there are no bills of exception whatever.

"For all these reasons we cannot but think that the mode in which the amount of the tax was computed by the learned justice in the Brush Company case, was an inadvertence and not the deliberate decision of the court, and that we would err if we should disregard the principles established by the cases quoted above, and change the assessment, made by the auditor general and state treasurer in this case in accordance with the uniform practice in the department, and the decisions of this and the Supreme Court.

"We, therefore, decide as follows: (1) The settlement appealed from in this case is legal and valid, the tax claimed therein is properly assessed, and the same is due from defendant

to the commonwealth. (2) The commonwealth is entitled to recover from defendant the tax charged in said settlement less credit for payment made as follows:

| | |
|---|---:|
| "Tax, as per settlement, | $4,250.00 |
| "Credit, payment made, | 570.00 |
| "Balance due, | $3,680.00 |
| "Interest from March 1st to 16th, 1892, at 12 per cent, | 18.40 |
| "Attorney general's commission at 5 per cent, | 184.00 |
| "Total, | $3,882.40 |

"Judgment is, therefore, directed to be entered for this amount, if exceptions be not filed according to law."

Exceptions were filed and overruled and judgment entered in accordance with the opinion. Defendant appealed.

*Error assigned* was entry of judgment as above.

*Richard S. Hunter*, for appellant, cited: Com. v. Brush Electric Light Co., 145 Pa. 147; Com. v. Pa. In. Co., 13 Pa. 165.

*James A. Stranahan*, deputy attorney general, *W. U. Hensel*, attorney general, with him, for appellee, cited: Act of June 1, 1889, P. L. 428; Com. v. Westinghouse Electric & Manufacturing Co., 151 Pa. 265; Com. v. Brush Electric Light Co., 28 W. N. 527.

OPINION BY MR. CHIEF JUSTICE STERRETT, July 19, 1893:

By agreement of parties, this case was tried by the learned president of the common pleas without a jury. He found, among other things, that defendant company was incorporated in October, 1887, for the purpose of purchasing, holding, leasing, improving, selling and otherwise dealing in real estate, with a capital of $100,000, divided into shares of $50.00 each.

Prior to the tax year, ending first Monday of November, 1891, the company was actively engaged in several branches of said business, but having reinvested the proceeds thereof in street improvements, buildings, etc., no dividends were declared in 1889 and 1890. During those years its capital stock was appraised at $150 per share and taxed three mills on that valu-

ation. During the tax year of 1891, it received from rents and sale of real estate $85,000, being 85 per cent of the par value of its paid up stock, which it distributed among its stockholders in proportion to their respective holdings. This distribution was reported to the auditor general by the company's treasurer, as required by law. He also reported that the average market value of the stock during that year was $95.00 per share; but, in same report, he averred that owing to the nature of the business the gross earnings and net earnings "cannot be estimated." Shortly afterwards he made affidavit which was treated as testimony, in which he undertook to furnish an estimate of said earnings. Passing upon that conflicting testimony the learned judge found as a fact, that the nature of the business in which defendant company was engaged precluded the possibility of estimating either gross or net earnings with any reasonable degree of accuracy, and hence the treasurer's averment in his report to the auditor general was correct.

On the basis of that report, the settlement, for state tax on capital stock under the acts of June 7, 1879, and June 1, 1889, was made against defendant, charging it with 42½ mills, or, in the language of the act of 1889, "at the rate of one half mill upon the capital stock for each one per centum of dividend so made or declared." From that settlement it appealed to the common pleas and specified only three objections thereto. Two of these, relating to matters of fact, are fully disposed of by the learned judge's findings of fact.

The remaining objection to the settlement involves the questions, whether the sums divided among the shareholders are to be regarded as dividends within the meaning of the act of 1889, and, if so, whether, for the year in which they were declared and paid, the defendant is taxable at the rate of one half mill for each one per cent of dividend, or at the rate of three mills on the appraised value of its capital stock.

The court was clearly right in holding that the sums distributed, during the tax year in question, were dividends. It cannot be pretended that they were part of the company's $100,000 capital. That remained intact, as is conclusively shown by the undisputed fact that the market value of the stock was $95.00 per share, nearly double its par value. The only rational conclusion that can be drawn from the facts is that the sums

distributed were earnings of the company divided among its shareholders in proportion to their respective holdings, and therefore dividends within the meaning of the law.

The learned judge was also right in disposing of the next question as he did.    He could not have ruled otherwise without ignoring the plain and explicit language of the act of June 1, 1889, P. L. 428.    The 20th section requires the secretary or treasurer of every corporation, taxable under the provisions of the act, to report in writing to the auditor general annually the amount of its capital stock, and the amount, date and rate per cent of all dividends made or declared during the year ; and the 21st section declares that every such corporation " shall be subject to pay . . . . annually a tax to be computed as follows, namely : If the dividend or dividends made or declared by such corporation . . . . during any year ended with the first Monday of November, amount to six or more than six per centum upon the par value of its capital stock, then the tax to be at the rate of one half mill upon the capital stock for each one per centum of dividends so made or declared."    It further provides, that if no dividend or one of less than six per centum be made or declared, the capital stock is to be appraised and " then the tax to be at the rate of three mills upon each dollar of a valuation of the said capital stock."

It will be observed that when the dividend made or declared equals or exceeds six per centum of the par value of the stock, the act in unequivocal terms fixes the rate as well as the mode of assessing the tax.    In such cases, there is no provision for an appraisement of the capital stock or for assessing the tax at any other rate.    It is only when no dividend is made or declared, or when that made or declared is less than six per centum, that a valuation of the stock is resorted to as a basis for taxation.    When it is six per centum or more the amount becomes an essential factor in determining the tax to be paid.

An examination of the record discloses no error in the learned judge's findings of fact, nor in the legal conclusions drawn therefrom.    The subject has been so fully and ably considered by him that elaboration of the questions involved is unnecessary. Neither of the assignments of error is sustained.

Judgment affirmed.